**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| LUCAS B. HORTON<br>　　Plaintiff,<br><br>v.<br><br>NATIONAL REPUBLICAN SENATORIAL<br>COMMITTEE<br>　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:22-cv-01000 |

**DEFENDANT NATIONAL REPUBLICAN SENATORIAL
COMMITTEE'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1
ARGUMENT .............................................................................................................................. 2
    I.    Plaintiff's Amended Complaint Alleges No Plausible Set of Facts Demonstrating That Defendant Sent The Messages Using an ATDS. ........................................................... 2
    II.   Plaintiff's "Do-Not-Call" Count has No Basis In Law or Fact. .................................... 10
    III.  Plaintiff's State Law and Federal Regulatory Claims Are Inapposite. .......................... 13
CONCLUSION ......................................................................................................................... 15
CERTIFICATE OF SERVICE ................................................................................................. 16

## Table of Authorities

**Cases**                                                                                                    **Page(s)**

*Adams v. Safe Home Sec. Inc.*,
   2019 U.S. Dist. LEXIS 126522 (N.D. Tex. July 30, 2019) ...................................................... 6

*Aikens v. Synchrony Fin.*,
   2015 U.S. Dist. LEXIS 115467 (E.D. Mich. July 31, 2015) ..................................................... 6

*Aquilar v. Ocwen Loan Servicing, L.L.C.*,
   289 F. Supp. 3d 1000 (D. Minn. 2018) ................................................................................. 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... *passim*

*Barton v. Temescal Wellness, L.L.C.*,
   525 F. Supp. 3d 195 (D. Mass. 2021) ................................................................................. 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 2, 6, 10

*Camunas v. Nat'l Republican Senatorial Comm.*,
   541 F. Supp. 3d 595 (E.D. Pa. 2021) ........................................................................ *passim*

*Camunas v. Nat'l Republican Senatorial Comm.*,
   2021 U.S. Dist. LEXIS 214217 (E.D. Pa. Nov. 4, 2021) ................................................ 12, 15

*Cunningham v. Nationwide Sec. Sols., Inc.*,
   2017 U.S. Dist. LEXIS 223796 (N.D. Tex. Nov. 2, 2017) ..................................................... 6

*Curry v. Synchrony Bank, N.A.*,
   2015 U.S. Dist. LEXIS 153131 (S.D. Miss. Nov. 12, 2015) ................................................. 6

*Deleo v. Nat'l Republican Senatorial Comm.*,
   2021 U.S. Dist. LEXIS 210858 (D.N.J. Nov. 1, 2021) ................................................. *passim*

*Dominguez v. Yahoo!, Inc.*,
   2017 U.S. Dist. LEXIS 11346 (E.D. Pa. Jan. 27, 2017) ........................................................ 3

*Facebook, Inc. v. Duguid*,
   141 S. Ct. 1163 (2021) .......................................................................................... *passim*

*Mainstream Mktg. Servs. v. FTC*,
   358 F.3d 1228 (10th Cir. 2004) ........................................................................................ 11

*Malikyar v. BAC Home Loans Servicing, LP*,
   2011 U.S. Dist. LEXIS 135947 (E.D. Tex. Oct. 28, 2011) ................................................. 15

*Mantha v. QuoteWizard.com, L.L.C.*,
  2020 U.S. Dist. LEXIS 45481 (D. Mass. Mar. 16, 2020) ...................................................... 9

*McEwen v. NRA of Am.*,
  2021 U.S. Dist. LEXIS 72133 (D. Me. Apr. 14, 2021) ......................................................... 5

*Schiller v. Physicians Res. Grp., Inc.*,
  342 F.3d 563 (5th Cir. 2003) ............................................................................................... 15

*Zelma v. Burke*,
  2017 U.S. Dist. LEXIS 1209 (D.N.J. Jan. 4, 2017) ............................................................... 7

**Statutes**

47 U.S.C. § 227 ............................................................................................................... *passim*
Tex. Bus. & Com. Code Ann. § 302.001 ................................................................................. 14
Tex. Bus. & Com. Code Ann. § 302.101 ................................................................................. 13

**Rules**

Fed. R. Civ. P. 4 .......................................................................................................................... 9
Fed. R. Civ. P. 8 .................................................................................................................. 2, 8, 9
Fed. R. Civ. P. 12 ....................................................................................................... 3, 5, 11, 15

**Other**

16 C.F.R. § 310 ......................................................................................................................... 12
47 C.F.R. § 64.1200 ...................................................................................................... 12, 14, 15

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Rep. & Order*,
  18 FCC Rcd. 14039, 2003 WL 21517853 (2003) ............................................................... 11

Defendant, National Republican Senatorial Committee ("NRSC"), respectfully requests that the Court dismiss Plaintiff Lucas Horton's ("Plaintiff") Amended Complaint based on his failure to state a claim.

## INTRODUCTION

On March 30, 2022, Plaintiff filed a facially deficient Complaint in Texas state court alleging a single violation under the Telephone Consumer Protection Act ("TCPA"). In that filing, Plaintiff alleged—with little to no supporting facts—that he improperly received a single text message from Defendant, and sought only injunctive relief.

On May 4, 2022, Defendant removed the case to federal court pursuant to federal question jurisdiction. ECF No. 1. On May 25, 2022, Defendant filed a Motion for More Definite Statement to enable it to respond to Plaintiff's allegations. ECF No. 6. Plaintiff agreed with Defendant's Motion and opted to file an Amended Complaint setting forth its allegations in greater detail. ECF No. 8. Plaintiff filed an Amended Complaint on June 6, 2022 requesting statutory and punitive damages, as well as injunctive relief.[1] ECF No. 10.

Despite having the advantage of a second bite at the pleading apple, Plaintiff has taken precious few steps toward correcting the deficiencies that doomed his original complaint. For this reason (and those that follow), the Court should dismiss his Amended Complaint in its entirety with prejudice.

---

[1] However, Plaintiff only requests injunctive relief with regard to a non-party. *Compare* ECF No. 10 ¶ 9 (requesting "an injunction requiring Defendant to cease all unsolicited telephone texting activities to consumers as complained of herein") *with id.* at 4 (alleging that non-party WinRed sent the alleged text message).

1

**ARGUMENT**

Federal Rule of Civil Procedure 8(a)(2) requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While "detailed factual allegations" are not required, Rule 8 does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Id.*

While the Court must accept all *factual* allegations as true, that "tenet . . . is inapplicable to legal conclusions." *Id.* Critically, the *Iqbal* standard requires a plaintiff to provide factual allegations that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. The claim must be more than conceivable and must instead be facially plausible. *See Twombly*, 550 U.S. at 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Here, there are no allegations, taken as true, that create the reasonable inference that NRSC sent the messages in question or that it used an Automatic Telephone Dialing System ("ATDS") to do so. Even assuming the truth of Plaintiff's allegations, none of the conduct he alleges suffices to state a claim for liability under any of the statutory causes of action upon which Plaintiff purports to rely.

**I.      Plaintiff's Amended Complaint Alleges No Plausible Set of Facts Demonstrating That Defendant Sent The Messages Using an ATDS.**

A violation under the TCPA occurs when: "[A]ny person within the United States . . . make[s] any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . " 47 U.S.C. § 227(b)(1)(A)(iii). Thus, for

Plaintiff's Amended Complaint to survive a Rule 12(b)(6) motion to dismiss, he "must allege that the [D]efendant (1) called [his] cellular telephone number, (2) used an automatic telephone dialing system . . . to do so, and (3) lacked the [P]laintiff's prior express consent." *Aquilar v. Ocwen Loan Servicing, LLC*, 289 F. Supp. 3d 1000, 1005 (D. Minn. 2018). Should he fail to properly plead any of those elements, he has failed to state a claim upon which relief can be granted under Rule 12(b)(6). *See id.* at 1005-06.

The U.S. Supreme Court Recently held that, to qualify as an ATDS, a device used to place a call—or in this case, send a text—"must have the capacity *either* to *store* a telephone number using a random or sequential [number] generator or to *produce* a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021) (emphasis added); *see also Dominguez v. Yahoo!, Inc.*, 2017 U.S. Dist. LEXIS 11346, at *3-4 (E.D. Pa. Jan. 27, 2017), *aff'd*, 894 F.3d 116 (3d Cir. 2018) (explaining that an ATDS must use a "random or sequential" number generator to either store or produce numbers and that "the phrase refers to the numbers themselves rather than the manner in which they are dialed"). Simply put, if Plaintiff failed to properly allege NRSC used a random or sequential number generator to either "store" or "produce" the number in question, then he has failed to properly allege the use of an ATDS—and thereby failed to state a claim upon which relief can be granted. *See Facebook, Inc.*, 141 S. Ct. at 1167.

Plaintiff's First Cause of Action alleges a violation of the TCPA premised on his allegation that "[u]sing an ATDS, Plaintiff's proxy, Winred, sent a text on its behalf and with its consent, knowledge, and for its benefit, to the Plaintiff without having any consent to do so." *See* Am. Compl., ECF No. 10 at 4. As an initial matter, based upon his own pleading, Plaintiff alleges that a non-party—Winred—sent the text message that is the basis for his lawsuit (not to mention that

3

he identifies that non-party as his *own* proxy).² The fact that Plaintiff sued an entity that he does not believe caused the alleged harm should be sufficient in and of itself to dismiss his claim. Moreover, Plaintiff offers little more than rampant legal conclusions and conjecture that NRSC had any control over the text message he allegedly received. He claims that "Defendant, or its proxy (Winred), places unwanted texts to consumer cellphones for the purpose of soliciting donations for the GOP and its candidates," but he pleads no facts establishing a relationship between Defendant and non-party WinRed. ECF No. 10, ¶ 1. Further, he alleges without factual support that the single text message that provides the basis for his lawsuit was sent "with the knowledge and approval of the Defendant." *Id.* ¶ 2. Despite having an opportunity to amend his complaint and presumably having the alleged text message within his possession, Plaintiff has included no screenshots or details about the content of the message that establish a connection to Defendant or non-party WinRed. Plaintiff has provided no "factual content that allows the court to draw the reasonable inference that" NRSC actually sent Plaintiff any messages. *Iqbal*, 556 U.S. at 678. All he has alleged is that one day he received a text message, and he thinks that NRSC might have had something to do with it. That is not a legally cognizable claim. Just last year, a different federal court dismissed a TCPA lawsuit brought against the NRSC because the plaintiff failed to sufficiently allege that the NRSC sent the messages in question. *Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595, 602 (E.D. Pa. 2021) (hereafter "*Camunas I*")

---

² It is also worth noting for the record that WinRed does not send text messages either, and that Plaintiff already knows this because he previously sued WinRed Technical Services (an separate entity related to WinRed) in Texas state court for a similar allegation and his complaint was dismissed with prejudice. *See* Order, *Horton v. WinRed Technical Services, LLC*, No. JS20-00325D (Dallas Cnty. Just. Ct. Oct. 12, 2021) (attached as Exhibit A). Left with no other avenue through which to sue WinRed, Plaintiff has apparently opted to bring an even weaker lawsuit against Defendant. For the Court's reference, Plaintiff's complaint in this earlier matter, as well as WinRed Techincal Services's Motion to Dismiss (with its two original exhibits), as attached hereto as Exhibits B and C, respectively.

("The Court agrees with the NRSC that the Amended Complaint fails to plausibly allege that the NRSC sent the messages at issue and will therefore grant the motion to dismiss the subsection 227(b) claim pursuant to Rule 12(b)(6)."). Other district courts have done the same in dealing with TCPA defendants. *See, e.g.*, *Deleo v. Nat'l Republican Senatorial Comm.*, 2021 U.S. Dist. LEXIS 210858, at *20 n.5 (D.N.J. 2021) (collecting cases that were dismissed on the basis that the plaintiff failed to plead sufficient facts that the call/text in question came from the defendant).

Second, and of specific importance to analyzing Plaintiff's pleading failure—and preeminently important to this case overall—is the defined term "automatic telephone dialing system," or ATDS. The TCPA defines an ATDS or an autodialer as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). And as noted above, the U.S. Supreme Court has provided important context regarding the sort of equipment that constitutes an ATDS. *Facebook*, 141 S. Ct. at 1167.[3] The Court made clear that the statutory definition encompasses only those devices that "have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id*. As such, Plaintiff must include some "factual content"

---

[3] District courts have already begun applying the narrow ATDS definition elucidated in *Facebook* in other TCPA cases, and in some instances have even narrowed it further. *See, e.g.*, *McEwen v. Nat'l Rifle Ass'n of Am. et al.*, 2021 U.S. Dist. LEXIS 72133, at *19 (D. Me. Apr. 14, 2021) ("After the *Duguid* opinion, the ATDS portion of the claim requires an allegation that [Defendant] used a random or sequential number generator to place a call to Plaintiff's cellphone, not merely a claim that its dialing system has that capability."). In addition, the U.S. Supreme Court has also recently vacated rulings from other circuits that adopted the broader definition of an ATDS. *See, e.g.*, *La Boom Disco, Inc. v. Duran*, __S. Ct. __, 141 S. Ct. 2509 (Apr. 19, 2021) ("Judgment vacated, and case remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of *Facebook*[.]").

showing NRSC used a random or sequential number generator to either "store" or "produce" the telephone number in question. *Iqbal*, 556 U.S. at 678. Plaintiff has shown neither.

At the motion to dismiss stage, a plaintiff must properly allege sufficient facts that, taken as true, could lead to the reasonable inference NRSC used an ATDS. *See Iqbal*, 556 U.S. at 678. "Simply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim." *Cunningham v. Nationwide Sec. Sols., Inc.*, 2017 U.S. Dist. LEXIS 223796, at *7 (N.D. Tex. Nov. 2, 2017); *see also Adams v. Safe Home Sec. Inc.*, 2019 U.S. Dist. LEXIS 126522, at *2-3 (N.D. Tex. July 30, 2019) (noting that conclusory allegations, without additional details indicating that defendant placed calls using an ATDS, fail under the *Twombly/Iqbal* standards). Specifically, in pleading a TCPA cause of action, "it is entirely reasonable to demand that plaintiffs provide sufficient information about the timing *and content* of the calls they receive to give rise to the reasonable belief that an ATDS was used." *Curry v. Synchrony Bank, N.A.*, 2015 U.S. Dist. LEXIS 153131, at *5 (S.D. Miss. Nov. 12, 2015) (quoting *Aikens v. Synchrony Fin.* 2015 U.S. Dist. LEXIS 115467, at *4 (E.D. Mich. July 31, 2015)).

Plaintiff flatly alleges that Defendant sent the message in question using an ATDS, and that Defendant's dialing system "has/have the capacity to store numbers, or to randomly produce telephone numbers to send text messages[.]" ECF No. 10, ¶ 17. But parroting verbatim statutory language defining the nature of a violation does not suffice to state a claim. Plaintiff's only purported evidence concerning his ATDS argument are conclusory allegations that: (1) the text had a "generic content"; (2) "that the incoming messages are not monitored"; (3) "that the number used to send the text messages does not accept incoming phone calls"; (4) that "Plaintiff's telephone number was produced using a random or sequential number generator"; and (5) that Defendant "had no logical reason to have [Plaintiff's] phone number." *Id.* These are, however,

merely "speculative assertions without 'further factual enhancement[s].'" *Zelma v. Burke*, 2017 U.S. Dist. LEXIS 1209, at *11 (D.N.J. Jan. 4, 2017) (quoting *Iqbal*, 556 U.S. at 678). Each will be examined in turn.

*First Allegation: Texts Were Generic*. By simply asserting that the text message in question appeared "generic," Plaintiff likely believes that he has carried his burden of plausibly alleging that the NRSC used an ATDS. ECF No. 10, ¶ 17. Plaintiff is wrong. Plaintiff presents no evidence that the message he received was generic, because he does not describe its content beyond claiming that it sought his "thoughts on the DISASTROUS Biden-Harris administration"—a description that, standing alone, could mean anything. *Id.* ¶ 13. Alleging that the message in question was "generic" is insufficient to plausibly allege that the NRSC used an ATDS to send the message. *See Camunas I*, 541 F. Supp. 3d at 603; *see also Deleo*, 2021 U.S. Dist. LEXIS 210858, at *17-18.

*Second and Third Allegations: Incoming messages "not monitored" and incoming calls not accepted.* Without *any* factual support, Plaintiff next speculates that the phone number from which he received the lone alleged text message was "not monitored," and that it "does not accept incoming phone calls." ECF No. 10, ¶ 17. Plaintiff offers no further information about what this means, how he knows that this is the case, why it is significant, or why he thinks it would be damning if true. Plaintiff does not allege that he called or texted the number back to determine the identity of the sender, nor does he explain the response (or lack thereof) that he received. Furthermore, even if Plaintiff did respond to the phone number that texted him, a failure on the part of the sender to acknowledge his message does not carry Plaintiff over the Rule 8 pleading threshold without more.

*Fourth Allegation: Plaintiff's number "was produced using a random or sequential number generator."* Plaintiff's fourth piece of evidence is entirely circular: He claims that he

knows Defendant used an ATDS to text him because "Plaintiff's telephone number was produced using a random or sequential number generator." *Id.* ¶ 17. In other words, Plaintiff knows that Defendant used an ATDS to text him because, according to him, Defendant produced his number using an ATDS. This allegation is a clear example of Plaintiff quoting statutory language verbatim to disguise the fact that he is not quite sure what it means. He knows that an ATDS can produce numbers using a random or sequential number generator, and he believes (incorrectly) that Defendant used an ATDS to text him, and therefore he reasons that Defendant produced his phone number using a random or sequential number generator (or, if that argument fails, by "magic[]" as he claims elsewhere in the Amended Complaint, *see id.* ¶ 15). Argument by syllogism is no argument at all.

*Fifth Allegation: Defendant has "no logical reason" to have Plaintiff's phone number.* Unable to conjure any factual evidence to support his cause of action, Plaintiff concludes his list of "evidence" that an ATDS was used to text him with a rhetorical shrug: Defendant must have used an ATDS because "they had no logical reason to have his phone number." *Id.* ¶ 17. But Plaintiff never actually alleges that *Defendant* had his phone number; rather, he claims (again without evidence) that a non-party, WinRed, sent him a single text message on Defendant's behalf. *Id.* at 4. It is impossible for Plaintiff to construct a plausible claim as to how he is entitled to relief when he cannot get his own story straight.

Plaintiff makes one additional frustrated allegation to support his claim that an ATDS was used here: "there is no way that the Defendant is manually sending out thousands of these text messages every day." *Id.* ¶ 21. As an initial matter, Plaintiff does not allege that he personally received "thousands of these text messages"; in fact, he only claims to have received one. *See id.* ¶ 13 (mentioning only "a text" received on March 1, 2022). Putting the slim nature of Plaintiff's

8

allegations aside, however, it is entirely technologically possible to manually produce thousands of text messages per day without resorting to an ATDS through the use of peer-to-peer texting platforms ("P2P"). The FCC considered the legality of P2P texting under the TCPA in a 2020 Declaratory Ruling, holding that "the fact that a calling platform or other equipment is used to make calls or send texts to a large volume of telephone numbers is not probative of whether that equipment constitutes an autodialer under the TCPA." Fed. Commc'n Comm'n, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ¶ 3, CG Docket No. 02-278 (June 25, 2020) (attached hereto as Exhibit D). As explained *supra*, the Supreme Court held in *Facebook* that a device "must have the capacity either to store a telephone number using a random or sequential [number] generator or to produce a telephone number using a random or sequential number generator" to be considered an autodialer under the TCPA. *Facebook, Inc.*, 141 S. Ct. at 1167. Plaintiff has not demonstrated with factual support why he thinks Defendant used an ATDS, and sheer volume alone will not satisfy his pleading burden even if that allegation were actually established here.

Many courts have held that a defendant's use of a "vanity short code" when sending a text is sufficient to indicate an ATDS. *See Camunas I*, 541 F. Supp. 3d at 603. Here, however, Plaintiff has not and cannot allege a short code was used. According to the Amended Complaint, the single message received by Plaintiff originated from a full, eleven-digit number (*i.e.*, a long code).[4] ECF No. 10, ¶ 13; *Mantha v. QuoteWizard.com, LLC*, 2020 U.S. Dist. LEXIS 45481, at *3 (D. Mass. Mar. 16, 2020) (allegations regarding use of "a long code does not . . . support a plausible inference

---

[4] "A short-code is a six-digit number that allows high-volume, application driver messaging . . . Long-codes are meant for person-to-person communications and can send only 1 message per record; short-codes can send 100 messages per second." *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 200 n.1 (D. Mass. 2021) (citation omitted).

that an ATDS was used.") (emphasis omitted). Plaintiff has not alleged that the number from which he received a text was registered to, or otherwise used by, Defendant. *See* ECF No. 10.

* * *

Plaintiff essentially asks this Court to take his word that NRSC used an ATDS, and this Court should decline that invitation. At bottom, Plaintiff has offered no more than conjecture, at one point even speculating that Defendant "magically pulled the Plaintiff's number out of thin air." *See* Am. Compl., ECF No. 10, ¶ 15. When a plaintiff resorts to baseless allegations about "magic," the Court can be certain they have not pled sufficient facts to state a claim. Under all governing precedent, these threadbare allegations fail to push Plaintiff's pleadings from the "conceivable" to the facially "plausible." *See Twombly*, 550 U.S. at 570. Because Plaintiff fails to plausibly allege that (1) the NRSC sent the message in question, and (2) the NRSC used an ATDS to send that message, his Amended Complaint should be dismissed under Rule 12(b)(6).

## II.   Plaintiff's "Do-Not-Call" Count has No Basis In Law or Fact.

Plaintiff's Amended Complaint also states that he placed his number on the Federal Trade Commission's ("FTC") National Do-Not-Call ("DNC") Registry in December 2011. *See* ECF No. 10, ¶ 12. In so doing, Plaintiff alleges NRSC violated Sections 227(b)(1)(B) and 227 (b)(1)(A)(iii) by contacting him without prior consent despite his number's inclusion in the DNC Registry. *Id*. ¶¶ 20-21. Plaintiff appears to have cited the wrong statutory provisions; Section 227(b)(1)(B) prohibits the delivery of prerecorded voice calls to residential telephone lines (whereas Plaintiff alleges that he received the alleged text on his cell phone, *see* ECF No. 10, ¶ 11), and Section 227(b)(1)(A)(iii) is the TCPA's standard prohibition on dialing cell phones without consent using an ATDS (*i.e.*, Plaintiff's Count 1). Defendant's best guess is that Plaintiff actually intended to bring a claim under Section 227(c)(5), and will respond to it as such.

Political calls and messages—such as the texts in question here—are expressly "exempt[]" from restrictions regarding calls to those on the DNC Registry. In fact, the FTC has itself made this observation on its official website. *See* Fed. Trade Comm'n, *The Do Not Call Registry*, *available at* https://www.ftc.gov/news-events/media-resources/do-not-call-registry (last visited June 21, 2022) ("There are some exemptions to the Do Not Call rules. Because of the limits to FTC's authority, the Registry does not apply to political calls[.]"). So too has the FCC—*i.e.*, the agency tasked with interpreting the TCPA, *see* 47 U.S.C. § 227(b)(2)—reached the same conclusion. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Rep. & Order, 18 FCC Rcd. at 14039-40 ¶ 37, 2003 WL 21517853, at *14 ("[C]alls that do not fall within the definition of 'telephone solicitation' as defined in section 227(a)(3) [now (a)(4)] will not be precluded by the national do-not-call list. These may include surveys, market research, political or religious speech calls.") (emphasis added).

Federal courts that have considered this question have arrived at identical conclusions. The only circuit court to address this issue, the Tenth Circuit, is in accord with the agency's reading of the law. *See Mainstream Mktg. Servs. v. FTC*, 358 F.3d 1228, 1234 (10th Cir. 2004), *cert. denied*, 543 U.S. 812 (Oct. 4, 2004) ("The national do-not-call registry's restrictions apply only to telemarketing calls made by or on behalf of sellers of goods or services, and not to charitable or political fundraising calls.") (citing 16 C.F.R. §§ 310.4(b)(1)(iii)(B), 310.6(a); 47 C.F.R. §§ 64.1200(c)(2), 64.1200(f)(9)) (emphasis added). Likewise, in several recent cases filed against the NRSC, district courts have held that the Do Not Call Registry does not apply to non-profit political organizations, such as the NRSC. *See Camunas v. Nat'l Republican Senatorial Comm.*, 2021 U.S. Dist. LEXIS 214217, at *15-22 (E.D. Pa. 2021) (hereinafter "*Camunas II*"); *see also Deleo*, 2021 U.S. Dist. LEXIS 210858, at *20-22 ("Here, because political organizations are

11

exempt from the Do-Not-Call-Registry's restriction, and because the Amended Complaint identifies the NRSC as a political organization [], [the plaintiff] cannot maintain a claim under § 227(c) of the TCPA.").

There can be no doubt that if a call is political in nature, it cannot support a DNC claim. Similarly, there can be no doubt that the purported text messages that Plaintiffs allegedly received were political in nature, which Plaintiff impliedly concedes. *See* ECF No. 10, ¶ 21 (addressing the political exception). Plaintiff cites to FCC guidance that notes political calls and texts cannot be sent without prior consent if the sender utilizes prohibited ATDS technology to do so, *see id.*, but as explained *supra*, Plaintiff has proffered no factual allegations that demonstrate Defendant used an ATDS. To the contrary, Plaintiff *has* pleaded that "Defendant . . . places unwanted texts . . . for the purpose of soliciting donations for the GOP and its candidates," that it does so "in an attempt to collect as many donations as possible," and that "[t]he Link in the text led to a website soliciting donations from the Defendant." ECF No. 10, ¶¶ 1, 8, 14. Thus, taking these allegations as true, NRSC's texts are insufficient to state a DNC claim under Section 227(c) as a matter of law, as Plaintiff concedes they were "political."

Finally, Plaintiff's DNC claim must fail because in order to sufficiently state a DNC claim, among other things, a plaintiff "must plead that [] they receive[d] *multiple* calls with twelve months" in violation of the DNC statutory provisions. *See* 47 U.S.C. § 227(c)(5) (creating a private right of action for persons who "receive[] more than one telephone call within any 12-month period . . . ."); *see also, e.g.*, *Deleo*, 2021 U.S. Dist. LEXIS 210858, at *20-21; *Camunas I*, 541 F. Supp. 3d at 604. Here, because Plaintiff only alleges the receipt of a single text, Plaintiff has not sufficiently alleged a DNC claim. *See* ECF No. 10, ¶¶ 2, 13.

**III. Plaintiff's State Law and Federal Regulatory Claims Are Inapposite.**

Plaintiff also brings two claims under Texas state law, one alleging Defendant made a prohibited telephone solicitation to a Texas consumer (Count 3) and the other alleging a state-law TCPA violation (Count 5). Neither of these causes of actions is supported based upon Plaintiff's scant factual allegations and the plain terms of the statutes he cites.

Plaintiff first alleges that Defendant violated Texas Business and Commerce Code Section 302.101(a), which prohibits a "seller" from making "a telephone solicitation . . . to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation was made." Words have specific meanings, and nearly every relevant word in this code section is defined in adjacent provisions of Texas law, and yet Plaintiff neglects to mention them. For example, Texas defines "telephone solicitation"—*i.e.*, the prohibited conduct in which Plaintiff alleges Defendant engaged—as "a telephone call a seller or salesperson initiates to induce a person *to purchase, rent, claim, or receive an item*." Tex. Bus. & Com. Code § 302.001(7) (emphasis added). It further defines "seller" as "a person who makes a telephone solicitation on the person's own behalf," and "purchaser" as "a person who [] is solicited to become . . . obligated for the purchase or rental of an item." *Id.* §§ 302.001(3), (5). Per Plaintiff's own allegations, the text he received "solicit[ed] donations for the Defendant." ECF No. 10, ¶ 14. It did not purport to sell or lease any "item" to Plaintiff at all; hence, under Texas law, it was not a prohibited "telephone solicitation." Tex. Bus. & Com. Code § 302.001(7). Furthermore, a "seller" is one that solicits on its "own behalf," and yet Plaintiff alleges that WinRed texted him on behalf of Defendant (and, again, for the purpose of soliciting donations, not selling Plaintiff any item). ECF No. 10 at 4.

Likewise, Plaintiff's fourth cause of action alleges that Defendant is required by federal law to maintain a written telemarketing policy, but "Defendant does not." ECF No. 10 at 5.

13

Plaintiff's basis for this claim is 47 CFR 64.1200(d)(1), which states that "[p]ersons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list." *Id.*

Preliminarily, it is not clear on the face of Plaintiff's Amended Complaint whether Defendant maintains a written do-not-call policy or not; Plaintiff never mentions this violation outside of Count 4, and never alleges that he asked for a copy of such policy and was refused. But even if he had made such a request, there is still no basis for liability here because Defendant is not subject to the requirements imposed by 47 CFR 64.1200(d)(1). By its own terms, that regulation only applies to those "making calls *for telemarketing purposes*." *Id.* (emphasis added). "Telemarketing" is defined just a few lines below the subsection upon which Plaintiff hangs his hat, and it means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 CFR 64.1200(f)(13). The regulation even includes an express exemption for "[t]ax-exempt nonprofit organizations" such as Defendant. 47 CFR 64.1200(d)(7); *see also Camunas II*, 2021 U.S. Dist. LEXIS 214217, at *16-22 (statutory language pertaining to commercial transactions does not incorporate political fundraising soliciatations).

Lastly, there is one simple reason why Plaintiff's Count 4 must fail: as discussed above, claims brought under § 227(c) (or 64.1200, which was enacted under rulemaking authority derived from §227(c)) must allege more than one call/text—here Plaintiff has only alleged one. *See* 47 U.S.C. § 227(c)(5) ("more than one telephone call within any 12-month period . . . ."); *see also, e.g.*, *Deleo*, 2021 U.S. Dist. LEXIS 210858, at *20-21; *Camunas I*, 541 F. Supp. 3d at 604; ECF No. 10, ¶¶ 2, 13 (only a single message alleged).

Hence, just as with his inapposite state law claims, this is yet another instance of Plaintiff tossing a cause of action into his Amended Complaint that sounds tangentially related to the conduct of which he complains without performing the minimal investigation necessary to determine what those statutory provisions actually mean.

## CONCLUSION

For the aforementioned reasons, this Court should dismiss with prejudice Plaintiff's Amended Complaint for failure to state a claim under Rule 12(b)(6). Accepting his own scant factual allegations as true, nothing alleged in Plaintiff's Amended Complaint amounts to a claim upon which relief can be granted, and allowing Plaintiff a third opportunity to get it right would be a waste of judicial times and resources.[5]

Respectfully submitted,

Dated: June 21, 2022
/s/ Dallin B. Holt
Dallin B. Holt
Texas Bar No. 24099466
HOLTZMAN VOGEL BARAN
 TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy.
Haymarket, VA 20169
(540) 341-8808
(540) 341-8809 (fax)
DHolt@holtzmanvogel.com

*Counsel for Defendant*

---

[5] Courts in the Fifth Circuit regularly dismiss complaints with prejudice for failure to properly state a claim in an amended pleading. *See*, *e.g.*, *Malikyar v. BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 135947, at *13 (E.D. Tex. 2011) (the Court dismissed the Amended Complaint with prejudice and held "the Court finds that there are insufficient facts asserted to support plausible claims . . . . Plaintiff fails to address Defendants' arguments, and her Amended Complaint fails to include sufficient facts to support these claims. Conclusory statements are insufficient to state a claim and are not entitled to an assumption of truth."); *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) ("[A]t some point a court must decide that a plaintiff has had a fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." (citation omitted)).

## **CERTIFICATE OF SERVICE**

I filed this motion and with the Court via ECF, which will electronically notify all counsel of record.

Dated: June 21, 2022 /s/ Dallin B. Holt
Counsel for Defendant